### RINGLER v ANDREWS

Ohio Appeals, 1st Dist, Butler Co

No 708. Decided Dec 31, 1936

P. P. Boli, Hamilton, for appellant.
Druggan & Gingher, Columbus, for appellee, The Ohio Casualty Insurance Co.

## OPINION

By HAMILTON, J.

Appeal on questions of law.

Appellant, plaintiff below, brought an action in the Court of Common Pleas of Butler County, Ohio, against the appellees, seeking to recover a judgment for coal furnished by appellant to The Federal Asphalt Paving Company.

The case was tried upon an agreed statement of facts, which, in brief, disclosed that: On June 4, 1932, The Federal Asphalt Paving Company entered into a contract with the State of Ohio for the construction of part of a state highway in Marion County, Ohio, and in compliance with §§ 2365-1, 2, and 4 GC on July 7, 1932, it, as principal, and The Ohio Casualty Insurance Company, as surety, executed their joint and several bond in the sum of $40,764.67 to the State of Ohio. That thereupon The Federal Asphalt Paving Company proceeded to carry out its work in the construction of said highway. The specifications provided and the material that was used for the top surface of said highway was asphalt. During the progress of the work, The Federal Asphalt Paving Company purchased from plaintiff, Martin Ringler, a quantity of coal of the value of $792.65, which coal was used by the Asphalt Company for the purpose of heating the asphalt, which material they placed as top surface upon said highway. That it was necessary to heat the asphalt used as the top surface in order to spread the same upon the surface of the roadway. During the progress of the work, The Federal Asphalt Paving Company became involved in financial difficulties, and was not, and is not now, able to pay for said coal so furnished by plaintiff, appellant. Subsequently, a receiver was appointed for The Federal Asphalt Paving Company.

The case was submitted upon the agreed statement of facts, and the Common Pleas Court rendered judgment in favor of the appellant, and against William N. Andrews, receiver, and upon the issues joined between appellant and appellee, The Ohio Casualty Insurance Company, the court found against the appellant and in favor of The Ohio Casualty Insurance Company. From this judgment, finding in favor of The Ohio Casualty Insurance Company, the appellant appeals to this court.

The sole question for determination is: Whether coal furnished to a road contractor, which it was necessary for him to use to heat asphalt in order to spread it upon the highway as top surface, is such material as is covered by §§2365-1, 2, and 4 GC?

Sec 2365-1, GC, requires the giving of a bond wth the obligation "for the payment by the contractor, and by all sub-contractors, for all labor performed or materials furnished in the construction * * * of such improvements."

Sec 2365-2, GC, provides:

"For the payment by the contractor and by all subcontractors, of all indebtedness which may accrue to any person, firm or corporation, on account of any labor performed or materials furnished in the construction or repair of such improvements."

Sec 2365-4, GC, provides the form of the bond to be given, as required by §§2365-1 and 2365-2, GC, and the pertinent part of that section is:

"and shall pay all lawful claims of subcontractors, material men and laborers, for labor performed and materials furnished in the carrying forward, performing or completing of said contract; we agreeing and assenting that this undertaking shall be for the benefit of any material men or laborers having a just claim as well as for the obligee herein."

The bond under consideration was conditioned in the words of the form provided in the sections above noted.

Appellant cites the case of Indemnity Co. v Day & Maddock Co., 114 Oh St 58, in support of the proposition that coal used in heating asphalt is within the meaning and intention of the statute quoted. This case is also cited by the appellee in support of their contention, wherein the Supreme Court held that rentals for equipment for use by the contractor were not covered by the obligation of the bond. Appellant urges the proposition that the legislature intended to require the surety upon the bond to be liable for such labor performed and materials furnished for the construction of a public building, as would be the subject of a lien under the mechanic's lien law were the building privately owned.

Appellee argues that by reason of the fact that fuel is specifically mentioned as lienable in §8310, GC, is an indication that the legislature did not intend that "materi-

als," as used in §§2365-1 and 2365-2, GC, should include coal.

The decisions of the courts have not been uniform in construing what the word "materials" covered under the lien laws, and it has been held that coal, gasoline, oil, and explosives used were not lienable. When these rulings were made, the legislature immediately amended the lien laws to include these materials so consumed subjects of mechanic's liens, apparently taking the view that under §8323-8, GC, providing for a liberal construction in order to protect laborers and material men, the courts had given too narrow a construction to the word "materials," and, therefore, took action to specifically include the materials which had previously been ruled not lienable by the courts.

It must be borne in mind that the sections providing for the bond were enacted by the legislature because of the fact that a lien could not be obtained in public construction work. This is stated in the fourth paragraph of the syllabus in the Day & Maddock case:—

"There is such an analogy between §§2365-1, 2365-2 and 2365-4, GC, and §§8310 and 8311, GC, that it is apparent that, in the enactment of §§2365-1, 2365-2 and 2365-4, GC, the Legislature intended to require the surety upon the bond required to be furnished by the contractor for the construction of a public building to be liable for such labor and material furnished for the construction of a public building as would be the subject of a lien under the Mechanic's Lien Law were the building privately owned."

If the legislature intended to protect the material men in the obligation of the bond to the same extent that the lien protects them, payment is required for the coal used, which is the subject of this litigation. The form of the bond is sufficient to cover payment of the coal in question here, wherein it uses the phrase "carrying forward, performing or completing of said contract." While it is true in the Day & Maddock case, the court held that the form of the bond, as provided in the statute, could only be considered by the court in determining the intention of the legislature and the meaning of the statute and may not operate to enlarge the scope of the statute, the form of the bond given in the case at bar may be considered to determine the legislative intent in the use of the words "materials furnished in the construction * * * of such improvements." We have in this case the

materials, to-wit: the coal, which was entirely consumed in melting the asphalt, which it was necesssary to melt in order to prepare the same for spreading. The coal is placed beyond any possibility of recovery or re-possession, and has entirely lost its identity. The heat produced from the coal, which melted the asphalt, has gone into the materials for the completing of the contract.

It would require no strained construction to hold that the coal consumed in preparing the asphalt was material furnished in the construction of the improvement. To hold differently, would be to give the words a strict and narrow construction, resulting in the defeat of the intendment of the laws protecting laborers and material men, and would make the statute requiring liberal construction inoperative.

Many cases are cited in which courts have held certain materials lienable, and others holding like materials not lienable, and they are of no special assistance in arriving at a decision in this case.

Our conclusion is, that every reasonable intendment is that the bond should be as broad and favorable as the Mechanic's Lien Law, since it was made to take the place of the lien law, where no lien could be had by reason of the public works construction; that the statute requiring a liberal construction requires the conclusion that coal entirely consumed in the work is within the meaning of the Code, which provides for the payment of the materials furnished in the construction of the improvement, and certainly the intendment is indicated in the form of the bond, which in terms used the words "in the carrying forward, performing or completing of said contract." We are only considering the words in the form of the bond as indicating the intention of the legislature in providing for the bond. We, therefore, conclude and hold that payment for the coal to the material man is within the obligation of the bond, and the trial court erred in its judgment in holding the contrary.

The judgment is reversed, and judgment may be here entered in favor of the appellant.

TATGENHORST, PJ, and ROSS, J, concur.